We have three cases on for argument this morning. The first one is number 2008-7047 Rockwell against the Department of Veterans Affairs. Mr. Carpenter, when you're ready. Please record Kenneth Carpenter appearing on behalf of Ms. Lois Rockwell. Ms. Rockwell is the widow of the veteran Mr. Earl. Mr. Earl, during his life, had a pending claim for compensation for a disability resulting from post-traumatic stress disorder. He died during the period of the appeal and Ms. Rockwell, as his qualifying survivor, has brought an action to obtain what we call accrued benefits under the statute by establishing his entitlement to compensation for the claim that was pending. In the case below, Ms. Rockwell specifically asserted to the court that the board had misinterpreted 38 CFR 3.304F by requiring more evidence to establish Mr. Earl's entitlement to a finding of service connection for his post-traumatic stress disorder than that which is required by the regulation. Specifically, Ms. Rockwell contends that the board mistakenly increased the burden of proof that a stressing event occurred during Mr. Earl's period of military service by requiring a preponderance of credible supporting evidence. The board also required verification of that event instead of corroboration. The regulation, in Ms. Rockwell's view, only requires some credible supporting evidence and the burden of proof, if you will, should be the burden of proof established for all matters at issue in veterans' claims, which is that reasonable doubt should be resolved in favor of the veteran. But that applies, as I understand it, the benefit of the doubt rule applies only if there is essential equipoise. Equipoise, yes. You're not suggesting, or perhaps you are, so you tell me, that something outside, if you set aside equipoise, is it your argument that something less than, let's say, a 50% proof of the source of the in-service source of the stressor is sufficient to justify an award? Well, I guess what I'm specifically suggesting is that the standard cannot be that there is a preponderance of credible supporting evidence, that by preponderance that establishes the traditional civil burden of proof, which is that it's more likely than not that the credible supporting evidence supports. In our view, the test should be just the opposite, that it is a question that it is at least as likely as not that the credible supporting evidence established that the stressful events, as alleged by the veteran, occurred during his or her period of military service. The board decision required something that they referred to as a qualifying stressor. We believe that there is no such thing under the regulation as a qualifying stressor, and that what happened in this case is that the board commingled. Isn't it true, though, that in the veterans area, put aside the various presumptions that exist under the statute and regulations, that normally the claimant has the burden of proof to show entitlement by a preponderance of the evidence, right? No, Your Honor. I believe that is not the case. What case is that? Well, I don't believe there is any case that suggests that there is any burden of proof on the veteran, and in fact, if you look to the statute at 5107A, it says that the only thing that the veteran is required to do is to present his claim and then support the claim. When the statute was amended in 2000, it specifically took out the term burden of proof. There is no burden established. It talks in terms of the responsibility. There is a responsibility of the veteran to assist the VA in its efforts to develop evidence in support of the claim. When we talk in terms of preponderance of the evidence, as you suggested in your question, we're talking about the normal civil burden. This is not a civil proceeding. This is not a case in which the veteran is required to prove anything. The veteran is required to present a claim and then support that claim if he or she is asked for evidence from the VA. So this argument is not peculiar to subsection F. You're saying it goes across the board. It does go across the board, Your Honor, although it is peculiar to this regulation because of the way in which the board, in its findings of fact, used the term preponderance of credible evidence because it imposed, for the first time, a requirement that there be a preponderance of credible support. Well, let me ask you about that. Go ahead, and you can finish. Well, I was just going to say if the VA had wanted to use that standard, then the VA would have written that into the regulation and said that what is required is a preponderance of creditable supporting evidence. But what I take the board to have found in this case in applying what they deem to be the right legal standard is at page 57 of the record, if you have the appendix there, the last paragraph carrying over onto the next page. After reviewing the evidence of record, the board finds that the preponderance of the evidence is against a finding that the veteran engaged in combat. That was the combat issue. That's right. And then they also find that the veteran was not credible with respect to the evidence that he submitted as to his traveling with the medevac. So I took it that the board understood that the 5107A, that's the benefit of the doubt statute, right? 5107B, yes. Is it B? B. Okay. I took from this that the board understood the benefit of the doubt rule, but nonetheless was making findings that the preponderance was the other way. You read their opinion as treating the combat rule as different from the rule that applied in the case of the source of the in-service stressor? Yes, Your Honor. And if I could direct the court's attention to the finding of fact number four at page 42 of the board's decision. What the board said there was… What was the appendix page? 42, Your Honor. …that the preponderance of credible and probative evidence at the time of the veteran's death does not establish that the veteran had PTSD, which could be associated with his military service or with a verified stressor event in service which could support the diagnosis. What we have here is a unique regulation in 3.304F that talks to the only identified disability of post-traumatic stress disorder as opposed to every other conceivable disability which requires additional evidence. And in this particular regulation, it is to support a diagnosis because of the fact that there is no actual evidence of what happened in service. Without actual evidence, there must be some creditable supporting evidence to support what the veteran says occurred. Now, when you talk in terms of a preponderance of creditable and probative evidence, then you're putting, you're shifting that burden inappropriately to the veteran. And there's nothing in the VA's regulation that suggests or supports that shift. You do agree that it is the veteran's burden to provide credible supporting evidence. Well, Your Honor, I would not phrase it that way. I think when we start talking in terms of burdens… I know you wouldn't phrase it that way, but… But I do agree that it is required in order to grant service connection that the record contain creditable supporting evidence that the actual… But how does the board know whether the supporting evidence is credible or not? Isn't there some… doesn't the term credible suggest there's some threshold? You can have supporting evidence. You could have a whole big bunch of supporting evidence. You could have very thin supporting evidence. The regulation requires credible supporting evidence. So that suggests someone has to make a judgment as to whether some body of information rises to that level, doesn't it? Yes, it does, Your Honor. And who makes that decision? Ultimately the board does. Ultimately the board. But the board… So how does the board weigh the evidence to get there? Well, I don't think it's a question of weighing, Your Honor. I think it's a question of what is the calculus. What is the burden… Well, calculus suggests adding and subtracting, doesn't it? And that's right. And do you add or subtract away from the evidence? And the evidence relied upon by Ms. Rockwell in this case was the report from ESG which talked about what his unit did and the amount of combat-related activities that his unit was in. Let me interrupt you just a second there. It helped me understand something that I'm not clear on. I got the sense from this rather elaborate setup that there is a distinction made between combat and non-combat stressors. That's correct, Your Honor. Under the regulation… If you show that you were in actual combat… It's presumed. It's presumed. Correct. The board says, as a matter of fact, he was not in actual combat. He did not engage in combat. And that seems… Not in this particular case. You're not arguing about that. No, Your Honor. So the question is, if you're a non-combatant but alleging service-connected stressors, you need credible… Supporting evidence. Supporting evidence. That the events that you say caused you problems actually occurred. Actually occurred, right. And the question is, is the report about his unit and what his unit did, is that or is that not? Does it arise to… That level. …credible supporting evidence? All right. Now, if I said to you, X didn't show a qualifying event, couldn't that mean an event that I deem to be credible based on the supporting evidence? I mean, is the fact that I say it qualifies or doesn't qualify… It could be, Your Honor. It could be understood that way. It could be understood that way. The problem is, is that's not the way in which the VA's regulation is written. It doesn't talk in terms of a qualifying stressor. And, in fact, by using the term qualifying stressor, it suggests that you have a list of qualifying stressors. No, it might suggest that I think a supporting evidence that's not credible isn't qualifying. That's right. But you are the only one who knows what that is. And the problem here is, is that all that this widow can do, all that Mr. Earle could have done during his life, was to go to the military and ask for confirmation of what his unit did. And that's what he did. There isn't any other way with the possible exception of having someone else describe how he perceived these events. I'm having trouble. When the regulation speaks of credible supporting evidence, doesn't that mean that you have to look at the entire record to see whether it's credible that he suffered this stressor or not? Normally, when you talk about the credibility of a witness's testimony, it's considered in the light of the whole record. And I'm not sure that there's really a difference, is there, between saying that it has to be credible on the record as a whole and saying that there has to be credible supporting evidence? Well, I'm not sure that that is what is communicated by this regulation. I think that that is one way to look at this assessment process. But the question here is that in the unique circumstance of a signaled-out disability, a post-traumatic stress disorder, how is the veteran, or in this case his survivors, communicated what it is that he or she has to support that claim with? What would be credible supporting evidence? And in that context, and in the context that Judge Plager was describing, all of the information is with the VA. There needs to be an objective standard about what credible supporting evidence is to establish the underlying diagnosis. And that's all that you do under this regulation. What you do by establishing credible supporting evidence is establish that the diagnosis is sufficient to allow for the award of compensation. Let me return, if I could for a moment, briefly to the question of the preponderance of the evidence and the equipoise issue. It seems to me, if you look at the last two sentences of the Court's opinion, starting on Blue Appendix 5 and over to 6, the Court seemed to understand the BVA as having applied the very rule that you're arguing for, which is to say that the appellant argues that the evidence was an equipoise, and therefore the Board erred when it did not apply the benefit-of-the-doubt rule, but the Board correctly weighed the evidence of record and found that a preponderance of the evidence was against the appellant's claim. Now, given that that's the Court's view of what the Board did, and given that that is, I think, consistent with at least your view of what the preponderance rule should be in connection with the equipoise, what is there for us to do, given our limited jurisdiction in this case with respect to that legal question? Well, Your Honor, that question says that the Board correctly weighed the evidence. Now, let's look at what the rule of law is for— And came to the conclusion that the evidence preponderates against the finding. Well, no, that's not what it said. That a preponderance was against the appellant's claim. That's from the Court's ruling. There was more evidence against the claim than there was in favor of it. That's different from saying he didn't have a preponderance of evidence in his favor. That's correct. And that's what I believe the Board actually said, as opposed to what the Court perceived it to be. Since we don't reexamine the Court's assessment of the Board's findings, what is there for us to review if, in fact, this statement— I'm not sure I understand why that statement isn't exactly what you've been arguing with respect to preponderance, but if it is— If I could back up just a little bit. The rule is that the veteran's statements alone cannot support an award for service connection for PTSD. So the finding that his testimony was not credible is simply irrelevant. All that's then left in the record is this evidence from ESG about what his unit did. So what the Board did was they said that it wasn't credible that he said that he participated in this, and then they said that the preponderance of credible and probative evidence was against this claim. Now, the fact of the matter is that all the evidence was from ESG, which described what his unit did. And in other veterans' cases, the Court below has said that you don't have to show what the veteran actually did. You simply have to show that it was at least as likely as not that, based upon what his unit did, that that stressor in fact occurred. Okay. Is what you're saying that the Court of Appeals for Veterans' Claims may have applied the correct standard or read the Board as applying the correct standard, but that the Board, in fact, applied the wrong standard and that we're not bound by the characterization of the Board's standard by the Court of Appeals for Veterans' Claims? Yes, sir. Thank you very much. Thank you. We'll hear next from the Governor. Ms. Holt? May it please the Court. First, with respect to the preponderance of evidence standard and the burden of proof, just to be clear, under Section 5107, it is the claimant's responsibility to present and support a claim for benefits. Before you get into that, could you give your response to Judge Dyke's question? I wanted to catch you early so you'd have the question still in mind. Do you remember the question? Your Honor, if you could please refresh my memory of the question, I would appreciate it. What I was asking Mr. Carpenter was if the Court of Appeals for Veterans' Claims mischaracterizes the standard being applied by the Board, we can look behind that and look to see what actual legal standard the Board did apply. We're not bound to accept the characterization of the Court of Appeals for Veterans' Claims. So if the Board applied an incorrect standard, we have jurisdiction. We can reverse even though the Court of Appeals for Veterans' Claims concluded that the correct standard was applied by the Board. Yes, Your Honor. If this issue in this case is properly before this Court, yes, this Court does in fact have the jurisdiction to decide all relevant issues of law, and therefore, if the issue is properly before the Court, would have jurisdiction to apply the correct law. To apply the correct law? I'm not sure that's what Judge Dyke's question was. In other words, if the Court of Appeals has articulated the correct legal standard, let's say, and nobody disputes that, and the dispute is over whether the Court is right in characterizing what the Board did as having applied that correct legal standard, can we review that question? No, Your Honor. If the Veterans' Court has properly applied the correct standard, then that... Well, let's say articulated the correct standard. then the Veterans' Court has properly articulated the law, and this Court is reviewing the Veterans' Court decision. The Veterans' Court properly articulated the law. So what you're saying, I take it, is that if the Board, hypothetically, said the burden on the Veteran here is to prove beyond a reasonable doubt that this was in service stressor, that's completely wrong. The Court says the Board applied the right standard and then articulates the standard that it articulated here, which is that the preponderance must be against the claim in order for the claim to be denied. And the Court said that's what the Board did, even though it's plainly not what the Board did. We could not touch that question? Is that what you're saying? We could not say the Court simply mischaracterized what the Board did? Well, Your Honor, this Court has jurisdiction to review the legal conclusions de novo, so it would have jurisdiction to review the legal conclusions of the Veterans' Court. And what about the legal conclusions of the Board? Why can't we review the legal conclusions of the Board? After all, the Court of Appeals for Veterans' Claims applying de novo review itself to the legal conclusions, why do we care how the Court of Appeals for Veterans' Claims characterizes the legal standard that the Board applied? Why can't we look directly to see what legal standard the Board applied and whether it's the correct standard? Well, Your Honor, this Court does certainly have before it the entire record, but the decision that it is reviewing and that it's before it is the Veterans' Court's decision. Yes, but how can a misdescription by the Veterans' Court insulate a legal error from our review? How is that possible? I take it what you're suggesting is that if the Board clearly applied the wrong legal standard and if the Veterans' Court said, oh, they didn't really do that, they did something entirely different, you're suggesting that we would have to say to the Veterans' Court, you got it wrong, that isn't what the Board seems to do, we're sending it back for you to rethink it. Yes, Your Honor. Rather than for us to say the Board got it wrong and the Board is wrong. Yes, Your Honor. You're saying we don't review the Board, we review the Veterans' Court. Yes, Your Honor. But that doesn't keep us from saying to the Veterans' Court you're mistaken in what you understood the Board to have done. No, Your Honor, that is correct. The decision being reviewed is the Veterans' Court decision, but if the Veterans' Court just got it completely wrong, then the proper avenue, what this Court could do is review that, remand that to the Veterans' Court and say, you just got it wrong, you need to reconsider. But why can't we also say that the Board got it wrong? I mean, it's de novo review. Why can't we say the Veterans' Court mischaracterized what the Board did and what the Board did is the wrong legal standard? We don't have jurisdiction to do that? The jurisdiction, Your Honor, is with respect to the Veterans' Court's decision. Now, this Court, in making a decision, certainly has the authority to lay out the proper law or regulation and direct the Veterans' Court to apply that. That would, I believe, be the proper avenue for fixing a problem. But that doesn't fix a problem of the sort that Judge Dyke's question addresses, which is a case in which the Veterans' Court has, by hypothesis, gotten it exactly right in terms of statement of the law. But the error is that the Veterans' Court is simply completely mischaracterizing, again by hypothesis, the actual rule that the Board applied. And the question is, can we drill down through the Veterans' Court's ruling, which is completely correct legally, and say, notwithstanding the Veterans' Court's conclusion that the Board applied the correct rule, we see that they did not and, therefore, that the Veterans' Court was wrong in characterizing what the Board did. You seem to be saying at one point, yes, we could, and I just want to make sure that's the government's position. Well, yes, Your Honor. This Court has jurisdiction to, I believe in that situation, to say to the Veterans' Court, this is the proper law that should be applied, and you need to actually apply that law. But, and this Court does have the entire record before it, but, again, this Court's jurisdiction does not go back to telling the Board itself that it concluded something wrong. The other problem in this case is that the Board's, the Veterans' Court's characterization, in large part, it's not just a characterization of law, it's actually also a factual finding as to whether or not there was preponderance of the evidence, of whether or not the facts were in equipose, and that this Court cannot review, a factual finding. Well, let's move, if we could, to the question of whether, in fact, the predicate for our questioning of you is accurate, or whether the Board did not make a legal error. What's your position on that with respect to the preponderance-slash-equipoise issue? That the Board did not make a legal error, Your Honor. Right. Now, what can you point to in the Board's opinion that supports your submission that the Board did not make a legal error, and, therefore, that the Court's characterization of what the Board did is correct? First and foremost, Your Honor, the Board concluded, and this is at page 61 of the Joint Appendix, that complete evidentiary development has failed to support, first, the Veterans' assertion that he engaged in combat in Vietnam, second, or to provide credible supporting evidence of an in-service stressor. So, right there, in and of itself, the Board has said complete evidentiary development has failed to provide credible supporting evidence, period. If you have no credible supporting evidence, and that's the finding, then, clearly, there's no evidence in equipoise. And so, there, in and of itself, the Veterans' Court is correct in saying, and correct in its application of the preponderance of the evidence standard and its conclusion that the evidence was not. You went a little fast in that preponderance of the evidence standard question. The Board is here saying that the evidentiary development fails to support the Veterans' assertion that there's credible supporting evidence, right? That's what you're reading from at 61. Yes, Your Honor. I'm just rephrasing that a little bit. Yes, Your Honor. How do we know that, in deciding whether there was insufficient credible supporting evidence, how do we know that the Board did not apply a beyond-the-reasonable-doubt standard to the question of whether there's credible supporting evidence? Well, Your Honor. You would agree that that would be error. If the Board had in mind there has to be credible supporting evidence beyond a reasonable doubt, you would agree that would be error on the part of the Board? Yes, Your Honor. How do we know they didn't do that? Well, the burden of the doubt portion of the preponderance of the evidence standard applies if the evidence is in equipoise. So if there is no credible supporting evidence, there's clearly no equipoise. It's not a scenario where the Board has said there is some credible supporting evidence, but we're just going to deny the claim. I'm not really worried about the equipoise problem at the moment. I'm trying to deal with Mr. Carpenter's assertion that in determining whether there's credible supporting evidence, the Board required too much evidence. That's basically what he's saying. He's saying credible supporting evidence should be a scintilla or actually whatever is in there. And you're saying no. I assume you're saying no. There has to be. I'm not quite sure what you're saying. Your Honor, credible supporting evidence is what is required by 3.304F. Now, in this case of a non-combat veteran, which is what Mr. Earle is, this Court has previously ruled in a national organization of veterans that for non-combat veterans, credible supporting evidence requires something in addition to lay evidence. Now, the Board and the Veterans Court clearly has a duty to look at all evidence. So that includes the lay testimony of Mr. Earle, which they did look at. But more than simply lay evidence is required. Now, in this case where— But the question is how much additional evidence is required. This is an odd situation. I mean, we run into something somewhat similar to this in the patent area sometimes about requirements for corroborating evidence aside from the testimony of the inventor. And it's a very odd situation. So what this regulation is saying, even though we've got a lot of evidence from the veteran that this thing happened, that alone isn't sufficient. It's not a normal preponderance of the evidence situation. So what the regulation purports to do, as you point out, as upheld in the NAV case, is to say you've got to have something else. And what we're struggling with is what something else is required. It wouldn't seem as though it should be that something else in and of itself proves the stressor by a preponderance of the evidence because then it wouldn't be just something else. It would be the only thing that would be necessary. So how do you address that? When you have this odd regulation which says, well, lay evidence will consider that, but you've got to have something else in addition to that, what's the proper definition of what that something else is? A preponderance of the evidence doesn't seem to be the right standard. Your Honor, it is something additional that, to use multiple words that are interchangeable, to corroborate or substantiate or verify the alleged in-service stressor. Now the problem here that we have is Ms. Rockwell is suggesting that there's credible supporting evidence simply because the Veterans Unit engaged in certain activities that Mr. Earle alleged were stressors. The problem here, however, is that Mr. Earle was part of a supply company that was part of a headquarters company and a medical battalion, and the documents that were received that the Department of Veterans Affairs obtained and reviewed make no mention of not only Mr. Earle but also of anyone in the supply section engaging in any of these alleged stressors. So while in a particular situation you could have these records obtained and they say that the members of the medevac unit did in fact go and pick up wounded soldiers or soldiers killed in action or in flying in to pick up a soldier had gunfire, you know, hit their helicopter, that may be enough credible supporting evidence for a member of that medevac unit. However, the records show in this case that wasn't Mr. Earle's job, that he alleges he engaged in that activity, but none of the unit records themselves suggest that Mr. Earle ever engaged in this activity. He was not listed as a member that participated in the medevac missions. No one in his supply company participated in these medevac missions according to the documentation. So the credible supporting evidence is what 3.304F requires, and that is something in addition to just lay evidence. But the problem is it's really confusing because what we have here is that the unit did these kinds of things. You say, well, it didn't say that the supply section of the unit did these things, but then you seem to be saying even if the evidence showed that the supply section also did these things, there might have to be individualized evidence showing that this particular veteran as part of the supply unit did these things. It's just really confusing as to what sort of supporting evidence is sufficient. Well, Your Honor, two points. With respect to Mr. Earle's role versus his supply section role, I was simply pointing out that in this case we have evidence of neither. Well, yes, but that's the problem. This is, I think, if I could be so bold, I think Judge Dyke's point is that corroboration comes in a whole variety of flavors. It is corroboration in a sense of Mr. Earle at the most basic level that he was in Vietnam. That makes it more likely than that somebody who was never in Vietnam that Mr. Earle's testimony is correct. But you work up the chain to was he in Vietnam, was he in this location, was he around the medevac operations, were people in his unit going out on these trips, were people in his unit going out without any documentation. If you had that kind of evidence, would that be corroboration? If not, why not? How do we know? That's the problem. That's the problem with this corroboration requirement. It's nice to just say corroboration, but it doesn't tell us anything about the level of corroborations needed. You understand what we're struggling with. Yes, Your Honor, and the level of corroboration needed is credible supporting evidence. Part of the problem here is that this Court, in asking these questions, is getting into or delving into the facts of this case and the factual findings of the Board and the Veterans Court, which is something that this Court does not have jurisdiction to do, and which is why the Board in the first instance and then the Veterans Court presented with this evidence is the one in the position to determine what is credible supporting evidence. Your argument is that the record does not support the Board misunderstanding its job. Your argument is that the Board, in applying the rule, may have misapplied it. But if so, that's not something we can reach. Is that your position? That is, if they applied the correct standard but applied it wrongly to the facts, our review standard specifically precludes us from reaching that dilemma. Yes, Your Honor. And the only question in our minds has to be, is it clear that they didn't even know what the rule was? That is, if the rule is you have to have corroborating evidence, something beyond the veteran's own testimony, and the Board says that, while the veteran's evidence of record does not verify his claimed combat status, if one of his stressors is verified, which I understood to mean by some evidence other than his, and that stressor is found to be related to his previous PTSD diagnosis, service connection can be granted. That's on page 59 of the appendix. I take it that your argument is, look, the Board understood it needed corroborating evidence. They may have thought they didn't have enough. We may think they did have enough, but that's not our job. Is that your argument? Yes, Your Honor. Very well. Thank you. Thank you. Is that right that Mr. Carpenter has two minutes and 43 seconds? Actually, I think I'm over my time. Oh, that's right. We'll give you a few minutes anyway. I was about to say, unless the Court has some specific questions, I don't believe I have any. You think we understand the case. I think you have it grasped, frankly, better than I did before I started. Mr. Carpenter, that's a wonderful concession. You should win on that concession alone. Bar logins can have a synergistic effect. Thank you very much. Did you have a question? No, no, no. I was just coming. The amendment is Christopher v. Army, 2008-31-84. So, Ms. Brownlow, when you're ready. If it pleases the Court, my name is Joree Brownlow. I represent Sylvester Christopher. He was an employee of the Corps of Engineers and worked as a metal worker.